IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| George Phillips, ) | Case No. 8:14-cv-02269-BHH-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| South Carolina Department of Corrections; ) | |
| Warden Robert Stevenson, III; and ) | |
| Chaplain J. Michael Brown, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for preliminary injunction filed by Plaintiff [Doc. 31]; a motion for summary judgment as to Counts I and II filed by Plaintiff [Doc. 32]; and a motion for summary judgment filed by Defendants [Doc. 33]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on May 5, 2014, against Defendants South Carolina Department of Corrections ("SCDC"), Warden Robert Stevenson, III ("Stevenson"), and Chaplain J. Michael Brown ("Brown") in the Court of Common Please for Richland County, South Carolina, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the South Carolina Religious Freedom Act ("SCRFA"). [Doc. 1.] On June 11, 2014, Defendants removed the action to this Court and contemporaneously filed an answer to the Complaint. [Docs. 1, 6.] On December 1, 2014, Plaintiff filed a motion to

enforce settlement agreement or, in the alternative, for preliminary injunction[1] and a motion for summary judgment as to Counts I and II, and Defendants filed a motion for summary judgment. [Docs. 31, 32, 33.] On December 2, 2014, Plaintiff filed a response in opposition to Defendants' motion for summary judgment [Doc. 34], and Defendants filed a reply on December 12, 2014 [Doc. 38]. Defendants filed responses in opposition to Plaintiff's motions on December 18, 2014 [Docs. 39, 40]; and Plaintiff filed a reply to both responses on January 5, 2015 [Doc. 43]. Accordingly, the motions are ripe for review.

## **BACKGROUND**[2]

Plaintiff, who was in the custody of SCDC and housed at the Broad River Correctional Institute at all times relevant to the allegations in the Complaint, alleges that he is an adherent to the Asatru religion and that SCDC does not recognize Asatru as a religion.[3] [Doc. 1-1 ¶¶ 1, 7, 9.] Because SCDC does not recognize Asatru as a religion, inmates are not permitted to possess items associated with Asatru or to receive chaplain services to help them celebrate the religion. [*Id.* ¶ 9.] Plaintiff has made repeated requests to have SCDC recognize Asatru, but all of his requests have been denied. [*Id.* ¶ 10.]

Plaintiff alleges that SCDC's policy PS-10.05, which governs inmate religious practice, and PS-10.08 § 9.01, which prohibits inmates in the special management unit

---

[1]This motion was originally filed as a motion to enforce settlement agreement or, in the alternative, for preliminary injunction. [Doc. 31.] On March 31, 2015, however, Plaintiff filed a partial withdrawal of the motion, indicating he withdrew the portion of the motion seeking to enforce the settlement agreement. [Doc. 45.]

[2]The facts included in this Background section are taken directly from Plaintiff's Complaint.

[3]According to Plaintiff, the United States Bureau of Prisons recognizes Asatru as a religion. [Doc. 1-1 ¶ 8.]

2

("SMU") from receiving any publications while in SMU, including religious literature, constitute a substantial burden to Plaintiff's religious exercise in violation of RLUIPA and SCRFA.  [*Id.* ¶¶ 19–26.]  Additionally, Plaintiff alleges a § 1983 claim against Stevenson and Brown for violating Plaintiff's First and Fourteenth Amendment rights.  [*Id.* ¶¶ 27–31.] Plaintiff seeks a declaratory judgment that SCDC policies PS-10.05 and PS-10.08 § 9.01 violate federal and state law; to enjoin Defendants from further violations; and costs, including reasonable attorneys' fees.[4]  [*Id.* ¶ 35.]

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any

---

[4]Plaintiff's Complaint contains a request for mandamus relief as an alternative claim if the Court were to determine that Plaintiff had not exhausted his administrative remedies. [Doc. 1-1 ¶¶ 32–35.]  However, Defendants agreed to waive any PLRA exhaustion defense. [Doc. 33-1 at 3 n.2.]  Accordingly, the Court declines to address Plaintiff's request for mandamus relief.

3

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a

4

rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Requirements for a Preliminary Injunction**

Usually, a temporary restraining order or preliminary injunction "protect[s] the status quo . . . to prevent irreparable harm during the pendency of a lawsuit [and] ultimately to preserve the court's ability to render a meaningful judgment on the merits."  *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003).  However, mandatory preliminary injunctions, which compel action, "do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."  *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (citing *Interstate Commerce Comm'n v. Baltimore & Annapolis R.R. Co.*, 64 F.R.D. 337 (D. Md. 1974)).  Therefore, "a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Microsoft*, 333 F.3d at 526.

In any event, a preliminary injunction is "an extraordinary remedy never awarded as of right."  *Winter v. Natural Res. Def. Coucil, Inc.*, 555 U.S. 7, 23 (2008) (citing *Munaf v.*

5

*Green*, 553 U.S. 674, 689–90 (2008)).  To obtain a preliminary injunction, a plaintiff must show four elements:

    1)    he is likely to succeed on the merits,

    2)    he will suffer irreparable harm if the preliminary injunction is not granted,

    3)    the balance of equities favors him, and

    4)    the injunction is in the public interest.

*Id.* at 20; *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009) (explaining how the *Winter* standard for preliminary injunctions is different from the standard previously applied in the Fourth Circuit), *judgment vacated and remanded*, 130 S. Ct. 2371 (2010), *in light of Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010).  The plaintiff must establish all four elements to receive injunctive relief.  *Winter*, 555 U.S. at 20.

Under *Winter*, the Supreme Court requires "that the plaintiff make a clear showing that [he] will likely succeed on the merits at trial."  *Real Truth About Obama*, 575 F.3d at 346 (citing *Winter*, 555 U.S. at 20).  Moreover, the party seeking the injunction must make a clear showing that it will likely suffer irreparable harm without an injunction.  *Id.* at 347 (citing *Winter*, 555 U.S. at 20).  Further, the Supreme Court in *Winter* emphasized the public interest requirement, requiring courts to pay "'particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

7

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**RLUIPA and § 1983 Claims**

The record reflects that Asatru was recognized as a religion by SCDC on September 9, 2014 and that, as of December 1, 2014, a draft of proposed guidelines for the Asatru faith was being reviewed by the General Counsel, the Deputy Director or Operations, the Deputy Director of Programs and Services, and the SCDC Director; the Branch Chief for Pastoral Services fully expected that the proposed guidelines would be adopted and implemented. [Doc. 33-2 ¶¶ 3–4.] Plaintiff has indicated that, as of December 20, 2014, SCDC had formally approved the guidelines. [Doc. ¶ 1.] Accordingly, Defendants argue

Plaintiff's claims for prospective relief are moot. [Doc. 33-1 at 3; *see also* Docs. 38; 39 at 2; 40 at 2.]

The Court notes that both parties failed to specifically address the applicability of RLUIPA's safe harbor provision, which provides that the government may avoid liability under RLUIPA "by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden." 42 U.S.C. § 2000cc-3(e). While the Court is not aware of any Fourth Circuit Court of Appeals case interpreting this safe harbor provision, other courts have interpreted it under a mootness analysis. *See, e.g.*, *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003) (holding RLUIPA's nondiscrimination provision inapplicable to the case because zoning amendments corrected any violation); *McDaniels v. Fischer*, No. C10-823-MJP-JPD, 2011 WL 2976873, at *15 (W.D. Wash. June 17, 2011) (holding that RLUIPA's safe harbor provision applies to a case where an inmate's request for a Halal diet was denied for one month before it was granted); *Pogue v. Woodford*, No. CIV S-05-1873 MCE GGH P, 2009 WL 2777768, at *9 (E.D. Cal. Aug. 26, 2009) (holding that a plaintiff could not receive any prospective relief because "the changed, current regulations cannot be reasonably challenged as infringing on plaintiff's religious practice/beliefs"); *Boles v. Neet*, 402 F.Supp.2d 1237, 1240 (D. Colo. 2005) (holding a RLUIPA claim was moot because the prison changed its policy to allow an inmate to wear religious garments). This interpretation appears consistent with the plain language of § 2000cc-3(e), which relieves the government from liability upon a

9

showing of a change in its policy or practice. Here, SCDC has now recognized Asatru as a religion and created guidelines to be included in the Handbook of Inmate Religious Practice, which is attached as an appendix to SCDC policy PS-10.05. Accordingly, RLUIPA does not provide Plaintiff a remedy for prospective relief.

Moreover, the Constitution limits this Court's jurisdiction to the adjudication of actual cases and controversies. U.S. Const. art. III, § 2, cl. 1; *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). The Supreme Court has held that voluntary cessation of challenged conduct moots a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," and the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the defendant." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203, (1968)). Voluntary cessation will not render a case moot unless events have completely and irrevocably eradicated the effects of the alleged violation. *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Here, Defendants are not likely to repeat the conduct challenged in the Complaint. The Complaint challenges SCDC's policies PS-10.05 and PS-10.08 § 9.01[5] and primarily

---

[5] Although not moot, Plaintiff's claims regarding SCDC policy PS-10.08 § 9.01 have no merit because this policy has been upheld by this Court under the Fist Amendment and

argues that SCDC's refusal to recognize Asatru as a religion has burdened Plaintiff's exercise of his religion because he could not receive chaplain services or receive religious literature. [Doc. 1-1 ¶¶ 9 ("The SCD[]C does not recognize Asatru as a religion and, *consequently*, inmates are not permitted to possess items associated with it or to receive chaplain services to help them celebrate the religion." (emphasis added)), 22, 23 ("*Because* the SCD[]C does not recognize his religion, Chaplain Brown continues to withhold from [Plaintiff] requested chaplain support services." (emphasis added)).] As previously stated, SCDC now recognizes Asatru as a religion and has created guidelines that will be included in the Handbook of Inmate Religious Practice, which is attached as an appendix to SCDC policy PS-10.05. Additionally, Brown avers that Plaintiff has religious materials in the form of a book entitled "Essential Asatru" as well as a copy of "Lokasenna." [Doc. 40-1 ¶ 2.] As alleged in the Complaint, the previous denial of chaplain services and/or religious materials was because Asatru was not recognized as a religion by SCDC. Based on this evidence, Defendants have met their burden to demonstrate that any allegedly wrongful behavior will not be repeated. SCDC has endeavored to recognize Asatru as a religion and to create guidelines for the practice of Asatru. The Court is aware of no evidence indicating that the recognition of Asatru as a religion is likely to be suspended. Indeed, as Defendants point out, SCDC policy PS-10.05 includes a provision for the recognition of a new faith group, as was done in this case; however, the policy does not include any provision to reverse the recognition of a faith group. For these reasons, Plaintiff's claims for prospective relief

---

RLUIPA. *See, e.g.*, *Taylor v. Ozmint*, C/A No. 1:09-915-TLW-SVH, 2010 WL 9447502 (D.S.C. Aug. 9, 2010), *Report and Recommendation adopted by* 1:09-915-TLW Docket Entry No. 46 (Sept. 16, 2010), *aff'd*, 424 F. App'x 231 (4th Cir. 2011).

11

under RLUIPA and § 1983 are moot, and Plaintiff's motions for preliminary injunction and for summary judgment should be denied and Defendant's motion for summary judgment should be granted on these claims.[6]

**State Law Claim**

Plaintiff's state law claim could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[7] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed

---

[6]Plaintiff's reliance on *Wall v. Wade*, 741 F.3d 492 (4th Cir. 2014), fails to persuade the Court that Plaintiff's claims are not moot. In *Wall*, the Fourth Circuit Court of Appeals rejected an argument that a prison's voluntary abandonment of a previously challenged religious policy rendered the action moot. However, in this case, there is no policy to be ceased; instead, SCDC followed its policy to recognize Asatru and implement guidelines for its practice, and nothing in the record indicates that this recognition will be suspended.

Additionally, the Court is aware that Plaintiff contends other specific acts have burdened his religious practice. For instance, Plaintiff complains that SCDC has refused to alter his meal times so that he may observe religious fasts, will not provide Plaintiff with access to animal crackers and apple juice for religious celebrations, and will not permit Plaintiff to attend the chapel because he is in SMU. [Docs. 32-4 at 4; 34 at 2.] First, some of the specific acts Plaintiff complains of occurred before the guidelines were formally approved. Additionally, these allegations are not properly before the Court in this case because, as stated above, Plaintiff's Complaint complains only that SCDC policy PS-10.05 does not recognize Asatru as a religion and that SCDC policy PS-10.08 § 9.01 prohibits inmates in SMU from receiving any publications. As such, the Court construes Plaintiff's case to raise a claim that his religious practice is burdened *because* SCDC did not recognize Asatru as a religion. Now that SCDC has recognized Asatru as a religion and implemented guidelines for the practice of Asatru, any complaint Plaintiff has about the implementation of these guidelines is a different claim and is not property before the Court on the Complaint in this case.

[7]A civil action for Plaintiff's state law claim could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.

all claims over which it has original jurisdiction." Here, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case and remand the state law claim to state court, where Plaintiff originally filed this action.[8]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the motion for preliminary injunction filed by Plaintiff be DENIED; the motion for summary judgment filed by Plaintiff be DENIED; and the motion for summary judgment filed by Defendants be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 1, 2015
Greenville, South Carolina

---

[8] In his reply in support of his motions for preliminary injunction and for summary judgment, Plaintiff argues the South Carolina state courts operate under different mootness principles than this Court. [Doc. 43 at 2.] Plaintiff's reply concluded the briefing on the pending motions in this case. Because this argument has not been fully briefed, the undersigned recommends remanding the state law claim for the state court to have an opportunity to address this argument.

13